IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Patrick Johnson,

    Plaintiff,

v.

Cascade Capital, LLC and
VeriCredit Solutions, LLC,

    Defendants

Civil Action File No.:

**COMPLAINT WITH
JURY TRIAL DEMAND**

## PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. and the Georgia Fair Business Practices Act, (GFBPA) O.C.G.A. 10-1-390 et seq.

## PARTIES

1. Plaintiff, Patrick Johnson, is a natural person who resides in Haralson County, Georgia.

2. Defendant, Cascade Capital, LLC, hereinafter referred to as "Cascade", is a limited liability corporation authorized to do business in the State

of Georgia. Defendant may be served with process via its registered agent, Corporation Service Company, at 40 Technology Parkway, Suite 300, Norcross, Georgia 30092.

3. VeriCredit Solutions, LLC, hereinafter referred to as "VeriCredit", is a limited liability corporation authorized to do business in the State of Georgia, and can be served through its registered agent, Corporation Service Company, at 40 Technology Parkway, Suite 300, Norcross, Georgia 30092.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendants because, inter alia, Defendants frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

6. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district.

7. Venue is proper in the Atlanta Division in that both Defendants have registered agents located in Gwinnett County which is in the Atlanta Division.

## FACTUAL ALLEGATIONS

8. Plaintiff is allegedly obligated to pay a consumer debt arising out of an alleged deficiency balance on a repossessed automobile used for personal and family purposes and is, therefore, a "consumer", as that term is defined by 15 U.S.C. § 1692a(3).

9. Defendant Cascade is a national debt buyer. Its principal business is the purchase of consumer debt and the collection of those accounts for its commercial benefit. Cascade regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party.

10. Cascade uses interstate commerce and/or mail in its business in the collection of consumer debts.

11. Cascade manages, and collects upon, thousands of consumer debt accounts annually.

12. Defendant Cascade is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13. Defendant VeriCredit is a collection agency specializing in the collection of consumer debt.

14. VeriCredit uses interstate commerce and/or mail in its business in the collection of consumer debts.

15. Defendant VeriCredit manages, and collects upon, thousands of consumer debt accounts annually.

16. Defendant VeriCredit is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

17. The Plaintiff has fallen behind on a number of consumer accounts over the last few years and is desirous of getting control over his finances. As part of that effort he obtained a copy of his credit report as published by TransUnion in November 2020. In reviewing that report he noted a tradeline reported as in collection by VeriCredit, with which he was unfamiliar.

*Communications to and from the parties*

18. On November 12th, 2020 the Plaintiff initiated a telephone call to VeriCredit to obtain more information.

19. He was connected with an individual identifying herself as "Lisa Andra". After verifying his identity, VeriCredit informed the Plaintiff that it was collecting a deficiency balance of $5,638.96 that originated with "Santander". (believed to be Santander Consumer USA Holdings Inc.)

20. VeriCredit informed the Plaintiff that the account was charged off by Santander in 2015 and subsequently purchased by Cascade who enlisted Vericredit to collect the account.

21. In all respects relevant to this action, Vericredit is and had been the agent of Cascade.

22. Vericredit's actions in this matter have been pursuant to the instructions and direction of Cascade.

23. The Plaintiff informed VeriCredit that he had not had the vehicle in 2015.

24. The Plaintiff's recollection is that the car was repossessed after a mechanical failure in 2014 and Plaintiff asked if the statute of limitations had run on any debt related to the vehicle.

25. VeriCredit's representative specifically represented to the Plaintiff that the account was still within the applicable statute of limitations and thus could be collected upon.

26. VeriCredit went on to advise the Plaintiff that there were a number of ways that he could make payments on the account and that deletion of the tradeline was possible.

27.     After discussing the debt and the Plaintiff's current financial condition, Defendant advised that Plaintiff could "settle" the claim for $4,341.99.

28.     Based on his personal experience and the ordinary usage of the term "settle" related to his other consumer debt the Plaintiff understood this to mean that the claim being collected by the Defendant was in suit or subject to suit thus generating a "settlement offer".

29.     The Plaintiff asked VeriCredit if, in the event he was able to make monthly payments on the amount in collection, they would appear on his credit report. VeriCredit sought to clarify Plaintiff's question, asking specifically if the Plaintiff was referring to monthly payments showing up on Plaintiff's credit, to which the Plaintiff responded "yes".  The Vericredit responded that payments would not be reflected until the account was completely resolved.

30.     VeriCredit again advised the Plaintiff that it could get the account down to $4,341.99, but that that offer could only be held open until 2:00 p.m. that day.

*Defendant's False and Misleading Representations*

31.     The Plaintiff believes and therefore avers that the original contract for purchase he entered into with Santander was defaulted upon before November,

2020 and that collection of the account through legal means is barred by the applicable statute of limitations; specifically O.C.G.A. § 9-3-24.

32. Upon information and belief, the statute of limitations applicable to the Defendant's claim expired no later than October 31st, 2020.

33. Accordingly, the Defendants' claim is not subject to enforcement through legal action. Its representations to the contrary are objectively false and materially misleading.

34. Whether a debt is barred by an applicable statute of limitations is fundamental to the debt's character and legal status. *See Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1260 (11th Cir. 2014)* (explaining the significance to debtors of statutes of limitations in determining a debt's legal status), *cert. denied*, *135 S. Ct. 1844, 191 L. Ed. 2d 724 (2015)*.

35. Under Georgia law, were the Plaintiff to make a partial payment via a writing acknowledging the debt, a check or money order for example, it could have the effect of reviving what is currently an expired statute of limitations thus exposing the Plaintiff to legal action on the debt.

36. At no time during their communications did the Defendant advise the Plaintiff that the applicable statute of limitations had expired or that it could be

revived as a result of Plaintiff complying with its requests to begin partial payments.

37. Georgia law requires a creditor who would seek a deficiency following the repossession and sale of a vehicle to perform specific conditions – precedent including the issuance of a statutorily mandated writing to the Debtor within 10 days of a repossession. This writing is commonly referred to as a "Notice of Intent to Sell". See, O.C.G.A., § 10-1-36.

38. A creditor's failure to comply with the requirements of the Georgia statute as they relate to the production and delivery of this writing is an absolute bar to the recovery of any deficiency. *Bryant Int'l, Inc. v. Crane*, 188 Ga. App. 736, 374 S.E.2d 228 (1988).

39. Upon information and belief, neither the Defendants nor the creditor at time of repossession complied with O.C.G.A. § 10-1-36.

40. Accordingly, the Defendants are precluded from seeking any such recovery as a matter of law.

41. At all times relevant to this action, Defendants knew or should have known that the requirements of O.C.G.A. § 10-1-36 had not been met and that they were unlawfully attempting to collect an unenforceable claim.

42. Defendants have falsely communicated and represented that Plaintiff is legally obligated to pay the amount it seeks.

43. A data furnisher, such as Vericredit, has an affirmative duty to update the information provided to a credit reporting agency to maintain accuracy and completeness per the FCRA, 15 U.S.C. § 1681s-2(a)(2)(B).

44. Upon information and belief, Defendant's agreements with Transunion and Experian require Defendant to report account information on a regular basis or schedule.

45. Moreover, per 15 U.S.C. § 1681s-2(a)(1)(A) a furnisher of credit information "…shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."

46. Thus, in the event the Plaintiff made partial payments on the account being collected by the Defendant, Defendant was obligated, as a matter of law, to reflect those payments and the adjusted balance in its reporting.

## **INJURIES-IN-FACT**

47. The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016

U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

48. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

49. Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *McCamis*, at 4, citing *Church*, at 3.

50. Defendant is subjecting Plaintiff to false, deceptive, unfair, and unconscionable means to collect the debt.

51. Defendants acts and omissions caused particularized harm to the Plaintiff in that the false and misleading information provided by Defendant hindered the Plaintiff from making the necessary decisions regarding the prioritization of his making payments to resolve his debt. Moreover, the representations of the Defendants caused the Plaintiff significant worry and anxiety as to his amenability to suit and Defendants' credit reporting of his account.

52. Accordingly, through the violation of Plaintiffs' statutorily created rights under the FDCPA, Plaintiffs have suffered an injury-in-fact sufficient to establish Article III standing.

## DAMAGES

53. As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

    a.) Being subjected to false, deceptive, unfair, and unconscionable debt collection practices;

    b.) Confusion related to the Defendant's credit reporting practice that adversely impacted the Plaintiff's ability to prioritize debt payments when they were possible;

    c.) Confusion related to the Defendant's credit reporting practice that adversely impacted the Plaintiff's ability to prioritize debt payments when they were possible;

    d.) Uncompensated time expended away from activities of daily living to confer with counsel regarding the Defendant's collection efforts; and,

    e.) Anxiety and worry caused by concern that Plaintiff was being called upon to pay an improper claim and by concern that Defendant was intending to engage in false credit reporting. The anxiety and worry experienced by the Plaintiff

was sufficient to negatively affect his demeanor, his ability to engage in daily activities, resulted in sleeplessness, and adversely affected his relationships with others.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et. seq.

54. Plaintiff incorporates by reference paragraphs 1 through 53 as though fully stated herein.

***Violations of 15 U.S.C. § 1692e and its subparts***

55. 15 U.S.C. §1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

56. The use of "or" in § 1692e means a representation violates the FDCPA if it is false or deceptive or misleading. *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012).

57. The standard in determining the nature of any such representation is that of the "least sophisticated consumer." Its purpose is to protect "naive consumers" with a minimal understanding of personal finance and debt

collection. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).

58. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)

59. A false representation in connection with the collection of a debt is sufficient to violate the FDCPA, even if it is not alleged or proven to be misleading or deceptive.

60. There is no debt, as a matter of law, by virtue of the Defendant's principal having failed to comply with the mandates of O.C.G.A. § 10-1-36.

61. Thus, each and every contrary representation made by Defendant is a violation of §§ 1692e, 1692e(2)(A), and e(10).

62. Defendants' claim is barred by the applicable statute of limitations. Their representations to the contrary are objectively false and a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).

63. Defendant's attempts to induce Plaintiff to make partial payments on an out-of-statute debt without disclosing its status as time-barred without disclosing that fact misled Plaintiff as to the character or legal status of his or her debt, thus violating 15 U.S.C. § 1692e(2)(A). See, *Palmer v. Dynamic Recovery Sols., LLC*, No. 6:15-cv-59-Orl-40KRS, 2016 U.S. Dist. LEXIS 59229 (M.D. Fla. May 4, 2016).

64. Although this nondisclosure is itself sufficient to violate the FDCPA, the Defendant's representations go one step further by asking the Plaintiff to "settle" his account. Such settlement offers serve only to compound confusion over the debt's true character or legal status, as a consumer researching what "settlement" means would reasonably find the dictionary's definition of the term: "an act of bestowing or giving possession under legal sanction." *Settlement*, Merriam-Webster, *http://www.merriam-webster.com/dictionary/settlement* (last visited November 1, 2020); *see also Settlement*, Black's Law Dictionary (10th ed. 2014) (defining the term to mean "[a]n agreement ending a dispute or lawsuit"). Consequently, the dunning letter in this case is misleading by failing to disclose that the debt it seeks to collect is time-barred and by giving the false impression that Defendant could sue to enforce the

debt. *Palmer v. Dynamic Recovery Sols., LLC*, No. 6:15-cv-59-Orl-40KRS, 2016 U.S. Dist. LEXIS 59229 (M.D. Fla. May 4, 2016).

65. Defendant's representations and entreaties were a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10). *See*, *Lopera v. Midland Credit Mgmt., Inc.*, 2016 WL 6650744 (M.D. Fla. Nov. 10, 2016) (denying dismissal of §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f claims based on letter offering to "resolve your unpaid" debt through payment plan, without disclosing that statute of limitations could be revived by partial payment or agreement to pay).

66. Defendants representation that it would not report partial payments made by the Plaintiff on his account to credit reporting agencies to which it reports was a threat to take unlawful action and violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

67. This type of false information obscures the timeline of Plaintiff's delinquent accounts and adversely affects his ability to make decisions as to if, when, and how to pay his delinquent accounts.

### *Violations of 15 U.SC. § 1692f and its subparts*

68. The conduct of the Defendant as described herein was unfair and unconscionable. It preyed upon perceived lack of sophistication of the Plaintiff.

69. Defendant's conduct violated 15 U.S.C. § 1692f.

## COUNT II

## VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

## O.C.G.A. § 10-1-390, et seq.

70. Plaintiff incorporates by reference paragraphs 1 through 69 as though fully stated herein.

71. O.C.G.A. § 10-1-390 et seq is commonly known as the "Fair Business Practices Act of 1975" (the "GFBPA").

72. The purpose of the GFBPA, is to protect consumers from unfair and/or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. O.C.G.A. § 10-1-391.

73. O.C.G.A. § 10-1-391 directs that the GFPBA is to be interpreted and applied liberally and in harmony with the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which implements the FDCPA.

74. O.C.G.A. § 10-1-393(a) of the GFBPA broadly prohibits unfair and/or deceptive business practices.

75. Defendant intentionally engaged in unfair and deceptive business practices, as set forth herein, in an effort to collect a consumer debt.

76. Defendant's conduct has implications for the consuming public in general.

77. Defendant's conduct negatively impacts the consumer marketplace.

78. Upon information and belief, Defendant does not maintain a place of business in Georgia and has no assets in Georgia, thus relieving Plaintiffs of the Notice and Demand requirements of O.C.G.A. § 10-1-399(b).

79. As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages pursuant to O.C.G.A. § 10-1-399(a).

80. As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages pursuant to O.C.G.A. § 10-1-399(a).

81. As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover treble damages pursuant to O.C.G.A. § 10-1-399(c).

82. Plaintiff is entitled to recover reasonable attorney's fees and expenses of litigation pursuant to O.C.G.A. § 10-1-399(d).

## **TRIAL BY JURY**

83. Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.) Plaintiff's actual damages;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k

d.) General, exemplary, and treble damages pursuant to O.C.G.A. § 10-1-399(a) & (c);

e.) Reasonable attorney's fees and costs pursuant to O.C.G.A. § 10-1-399(d); and

f.) Such other and further relief as may be just and proper.

Respectfully submitted this 23rd day of December, 2020.

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
Mathew Landreau
Georgia Bar No.: 301329
*Mlandreau@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3300
Fax (404) 235-3333

*Plaintiff's Attorney*